1

2

3

4                                                    **E-FILED on**    12/28/05    

5

6

7

8                          IN THE UNITED STATES DISTRICT COURT

9                    FOR THE NORTHERN DISTRICT OF CALIFORNIA

10                             SAN JOSE DIVISION

11

| | |
|---|---|
| 12   TOM BYRNES, | No. C-04-03941 RMW |
| 13           Plaintiff, | ORDER GRANTING DEFENDANTS' |
| 14       v. | MOTIONS FOR SUMMARY JUDGMENT AND GRANTING DEFENDANTS' MOTION FOR SANCTIONS |
| 15   LOCKHEED-MARTIN, INC., DEIRDRE WONG, LARRY MAYER, JIM SCHNEPP, ET | **[Re Docket Nos. 34, 39, 44]** |
| 16   AL., | |
| 17         Defendants. | |

18

19        Tom Byrnes ("Byrnes") has sued Lockheed-Martin, Inc. ("Lockheed") for (1) employment

20 discrimination, (2) wrongful termination of employment in violation of public policy, (3) breach of contract,

21 (4) fraud and deceit, (5) defamation, and (6) intentional infliction of emotional distress.  Byrnes has also

22 sued Deirdre Wong ("Wong"), Larry Mayer ("Mayer"), and Jim Schnepp ("Schnepp"), Lockheed

23 employees (collectively with Lockheed, "defendants"), for defamation and intentional infliction of emotional

24 distress.  Defendants move for summary judgment on all causes of action.  In addition, Wong, Mayer and

25 Schnepp move for sanctions under Federal Rule of Civil Procedure 11 ("Rule 11").  Byrnes opposes

26 defendants' motions. The court has read the moving and responding papers and considered the arguments

27

28

1  of counsel.  For the reasons set forth below, the court grants both the motions for summary judgment and

2  the motion for sanctions.

3                                             **I.  BACKGROUND**

4         Lockheed hired Byrnes in 1988 as a Systems Planning Engineer.  Schnepp Decl. Supp. Mot.

5  Summ. J ("Schnepp Decl.") Ex. B.  Since 2000, Schnepp supervised Byrnes.  *Id*. at ¶ 2.  Byrnes led a

6  project known as IDMT.  *Id*.  In order to staff the IDMT project, Byrnes worked with personnel from

7  another department.  Wong was one such individual.  *Id*.  She worked for Mayer's department.  *Id*.

8         Defendants assert that Byrnes sexually harassed Wong.  Around December 2002, he gave her a

9  card and an orchid.  Byrnes had written in the card "I consider our friendship as beautiful (and fragile) as

10 this orchid.  I hope that both will continue to grow and flower in the future."  Sprinkle Decl. Supp. Mot.

11 Summ. J ("Sprinkle Decl.") Ex. A.  In Byrnes' deposition, he testified that he would complement Wong on

12 her body because "she goes to the gym all the time, and you know, if she doesn't want people to comment

13 on her body style, you know, then why does she go to the gym and work out all the time?"  Byrnes Depo.

14 at 153:9-12.  For Christmas that year, he gave her a diamond and ruby ring.  *Id*. at 145:2-17.  On

15 February 26, 2002 he fixed a computer problem for her.  He emailed her and asked "for the simplest of

16 rewards—will you allow me to follow you up the stairs again?  Please?"  Sprinkle Decl. Ex. 9.

17        Lockheed claims that it became aware of the situation between Byrnes and Wong in February

18 2003, when Byrnes sent a memo to Schnepp asking for him to remove Wong from the IDMT project.

19 Byrnes Depo. at 388:11-14.  According to Schnepp, he became curious because Byrnes had always

20 spoken highly of Wong.  Schnepp Decl. ¶ 3.  Schnepp contends that he spoke to Wong, who informed him

21 about Byrnes' advances.  *Id*.  Schnepp claims that he told Byrnes not to contact Wong.

22 *Id*. at ¶ 4.  Nevertheless, in September 2003, Byrnes confronted Wong.  He told her that he "was tired of

23 being complained about . . . and it's doing her no good to continue complaining."  Byrnes Depo. at 347:5-

24 350:3.  According to Lockheed, Wong reported this conversation to Mayer because Schnepp was out of

25 the office.  Mayer reprimanded Byrnes, telling him that he was not to go near Wong "in any way, shape, or

26 form." *Id*. at 350:15-17.

27

28

1    On September 8, 2003 Byrnes wrote a memo to Schnepp.  Sprinkle Decl. Ex. 19.  Byrnes

2    informed Schnepp that he believed that Mayer was trying to take over the IDMT project.  *Id*.  He wrote:

3    "A caution: the next time Mayer engages me in any way, whether under color of your authority or not, I will

4    consider it an act of aggression and respond accordingly."  *Id*.  Byrnes asked Schnepp either to transfer the

5    IDMT project to Mayer or instruct him not to interfere with Byrnes' work.  *Id*.  Schnepp then met with

6    Byrnes.  During the meeting, Byrnes became angry, and told Schnepp that "this is why people go postal."

7    Byrnes Depo. at 112:22-113:20.  According to Lockheed, a few weeks before the meeting, a Lockheed

8    employee at a plant in Meridian Mississippi had killed several co-workers.  In light of that event, Schnepp

9    reported Byrnes' statement to company security and upper management.  Schnepp Decl. ¶ 5.

10    On September 16, 2003 Byrnes went on medical leave.  According to Lockheed, it has a company

11    policy not to discipline employees who are on medical leave.  Schnepp Decl. ¶ 6.  On February 18, 2004

12    Lockheed received a letter from Byrnes' doctor stating that Byrnes would be able to return to work on

13    March 1, 2004 with one limitation: "that Mr. Byrnes cannot have any business or professional interactions

14    with Mr. Larry Mayer."  Sprinkle Decl. Ex. 31.  Lockheed claims that, after receiving the letter, it both

15    resumed its investigation into Byrnes' alleged misconduct and began to search for a position that met

16    Byrnes' demand.  Schnepp Decl. ¶ 7.  Lockheed contends that its investigation revealed that Byrnes had

17    engaged in conduct that warranted that his employment be terminated.  *Id*.  Lockheed fired Byrnes effective

18    May 7, 2004.

## II.  ANALYSIS

### A.    Summary Judgment Standard

21    Summary judgment is proper when there is no genuine issues as to any material fact and the movant

22    is entitled judgment as a matter of law.  *See* Fed. R. Civ. 56; *Celotex Corp. v. Catrett,* 477 U.S. 317,

23    322-23 (1986).  This court must regard as true the non-moving party's evidence, if supported by affidavits

24    or other evidentiary material.  *Id*. at 324.  Where the moving party does not bear the burden of proof on

25    the issue at trial, it may discharge its burden of showing that no genuine issue of material fact remains by

26    demonstrating that "there is an absence of evidence to support the nonmoving party's case." *Id*. at 325.  If

27    the moving party shows an absence of evidence to support the non-moving party's case, the burden shifts

28

ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT AND GRANTING DEFENDANTS' MOTION
FOR SANCTIONS
C-04-03941 RMW
KMF/DOH                                           3

1  to the opposing party to produce "specific evidence, through affidavits or admissible discovery material, to

2  show that the dispute exists." *Bhan v. NME Hospitals, Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991).

3      Unfortunately, Byrnes appears to have misunderstood the summary judgment standard.  Byrnes'

4  entire evidentiary submission in opposition to defendants' motions consists of his declaration:

5          I have in my possession numerous facts contained in documents and from other sources
        which show that a campaign of slander and libel was perpetrated against me.  For

6        example, I understand from documents and personal observations that defendant Wong,
        defendant Schnepp, and defendant Mayer had more than one discussion regarding

7        purported charges of sexual harassment against me, how such charges should be handled
        or managed, and what effect such charges might produce.

8        ***
        Documentation produced by the defense confirmed my beliefs that defendant Mayer had

9        produced confidential reports and emails which contained speculation that I might be a
        sexual harasser or an unstable or dangerous person.

10       ***
        Much of the written documentation already provided by the defense has validated the

11       allegations regarding the true intentions and methods used by defendants.

12  Byrnes Decl. Supp. Opp. Mot. Summ. J. ("Byrnes Decl.") ¶¶ 3, 9, 14.  As defendants correctly note,

13  Byrnes' contention that he "ha[s] in [his] possession numerous facts contained in documents" that support

14  his legal claims is insufficient.  "A trial court can only consider admissible evidence in ruling on a motion for

15  summary judgment." *Orr v. Bank of America*, 285 F.3d 764, 773 (9th Cir. 2002).  Byrnes' attempt to

16  prove what these "documents" say through nothing more than his own testimony suffers from numerous

17  evidentiary flaws.[1]  Although Byrnes' attorney makes numerous factual allegations in his opposition motions,

18  he does not cite any declaration or deposition testimony to substantiate his claims.  "[A] party cannot

19  manufacture a genuine issue of material fact merely by making assertions in its legal memoranda." *Varig*

20  *Airlines v. Walter Kiddle & Co., Inc.*, 690 F.2d 1235, 1238 (9th Cir. 1982).  Accordingly, Byrnes has

21  no admissible evidence to support his claims.  As explained below, he cannot meet his summary judgment

22  burden.

23

24

25

26

27      [1]      The documents have not been authenticated.  In addition, Byrnes' attempt to prove the
    contents of these documents without introducing them violates the Best Evidence Rule.
28

ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT AND GRANTING DEFENDANTS' MOTION
FOR SANCTIONS
C-04-03941 RMW
KMF/DOH                                                    4

1

**B.      Discrimination Claims**

2

Byrnes first asserts that Lockheed fired him because of his age and disability.[2]  According to

3

Byrnes, Lockheed's conduct violated the California Fair Employment and Housing Act ("FEHA"), Cal.

4

Gov't Code §§ 12940 *et seq*.  The FEHA forbids employers from discriminating against employees

5

because of their race or firing them for engaging in protected behavior:

6

It shall be an unlawful employment practice . . .
                    ***

7

(a)  For an employer, because of the . . . physical disability, mental disability, . . . [or] age
. . . of any person, . . . to refuse to select the person for a training program leading to

8

employment, or to bar or to discharge the person from employment or from a training
program leading to employment, or to discriminate against the person in compensation or

9

in terms, conditions, or privileges of employment.

10

Cal. Gov. Code § 12940(a).  To succeed on his FEHA claims, Byrnes must first establish a *prima facie*

11

case of discrimination.  *See, e.g., Guz v. Bechtel Nat. Inc*., 24 Cal. 4th 317, 355 (2000).  If Byrnes meets

12

this burden, he creates a presumption of discrimination which Lockheed can rebut by "articulating some

13

legitimate, non-discriminatory reason" for its employment decisions.  *Texas Dept. of Community Affairs*

14

*v. Burdine*, 450 U.S. 248, 253 (1981).  If Lockheed does so, Byrnes must present "specific, substantial

15

evidence" that Lockheed's reasons are pretextual.  *Guz*, 24 Cal. 4th at 356.

16

**1.      Age Discrimination**

17

Byrnes argues that Lockheed harassed and fired him because of his age.  However, in order to

18

bring a civil action under FEHA, Byrnes must exhaust his administrative remedies  *See Romano v.*

19

*Rockwell Int'l, Inc.,* 14 Cal. 4th 479, 492 (1996).  Specifically, he must file a written charge with the

20

Department of Fair Employment and Housing ("DFEH").  "The scope of the written administrative charge

21

defines the permissible scope of the subsequent civil action." *Rodriguez v. Airborne Express*, 265 F.3d

22

890, 896 (9th Cir. 2001).  Here, Byrnes' DFEH complaint did not allege that Lockheed discriminated

23

against him on the basis of his age:

24

I believe that I was denied a reasonable accommodation because of my disability
(diabetes/stress) and terminated because of my disability and in retaliation for

25

requesting a reasonable accommodation.  My belief is based on the following:

26

27

[2]      In his opposition brief, Byrnes contends Lockheed also discriminated against him on the
basis of his race, gender, and ethnicity.  *See* Opp. Mot. Summ. J. at 1:4; 1:16; and 11:8.  None of these
allegations appear in the complaint.

28

ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT AND GRANTING DEFENDANTS' MOTION
FOR SANCTIONS
C-04-03941 RMW
KMF/DOH                                               5

A.   On September 16, 2003 I was placed on an extended medical leave of
absence for work-related psychiatric issues.

B.   On approximately February 25, 2004 I provided my employer with a doctor's
note indicating that I could return to work on March 1, 2004 with a
reasonable accommodation (no business of professional interactions with
Larry Mayer).

C.   My employer failed to enter into an interactive process with me and although I
am able to perform the essential functions of my job with reasonable
accommodation I was terminated on May 7, 2004.

Schnepp Decl. Ex. D.  Byrnes thus cannot raise this issue before the court.

### 2.   Firing Based on Disability

#### a.   *Prima Facie* Case

In order to establish a *prima facie* case for discriminatory firing in violation of the FEHA, Byrnes

must prove that (1) he was a member of a protected class, (2) he was performing competently in the

position he held, (3) he suffered an adverse employment action, such as termination, and (4) some other

circumstance suggests discriminatory motive.  *See Guz v. Bechtel National Inc.*, 24 Cal.4th 317, 355

(2000).  This initial step in the burden-shifting analysis "is designed to eliminate at the outset the most

patently meritless claims, as where the plaintiff is not a member of the protected class or was clearly

unqualified, or where the job he sought was withdrawn and never filled."  *Id*.  Byrnes is a member of a

protected class and was fired.  Although Lockheed argues that Byrnes was not performing his job

satisfactorily in light of his conduct toward Wong and statements about "go[ing] postal," this appears to be a

factual issue not amenable to summary judgment.  Finally, Lockheed fired Byrnes shortly after he took

medical leave, raising the theoretical possibility that his disability was a factor.  Byrnes thus states a *prima*

*facie* case of disability discrimination.

#### b.   Lockheed's Reasons for Firing Byrnes

Lockheed claims that it fired Byrnes because he (1) harassed Wong, (2) retaliated against her, and

(3) refused to obey Schnepp's admonition not to contact Wong.  These are legitimate, non-discriminatory

reason for terminating Byrnes' employment.

#### c.   Evidence that Lockheed's Reasons are Pretextual

Byrnes appears to allege that he was fired in retaliation for requesting an accommodation for his

disability.  He went on medical leave on September 16, 2003.  Sprinkle Decl. Ex. A.  In February 2004,

ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT AND GRANTING DEFENDANTS' MOTION
FOR SANCTIONS
C-04-03941 RMW
KMF/DOH

1    his doctor informed Lockheed that Byrnes would return to work if it "accommodated" him by ensuring that

2    he would have no contact with Mayer.  Byrnes Depo. at 372:3-3; Sprinkle Decl. Ex. 31.  Lockheed

3    refused to comply.  Sprinkle Decl. Ex. 22.

4         There are two reasons why no reasonable jury could conclude that Lockheed fired Byrnes on the

5    basis of his disability.  First, absent unusual circumstances, courts routinely reject "boss-ectomy" claims like

6    Byrnes': where plaintiffs argue that their employer is liable for failing to assign them to another supervisor.

7    *See Weiler v. Household Finance Corp.*, 101 F.3d 519, 525 (7th Cir. 1996) (employer not liable under

8    ADA "if a plaintiff merely cannot work under a certain supervisor"); *Kennedy v. Dresser Rand Co.*, 193

9    F.3d 120, 122-23 (2d Cir. 1999) ("[t]here is a presumption, however, that a request to change supervisors

10   is unreasonable").  Byrnes presents no evidence or argument that his request that Lockheed insulate him

11   from Mayer falls outside this general rule.  Second, Byrnes produces no evidence to counter defendants'

12   claims that he sexually harassed Wong and mentioned "go[ing] postal" shortly after a shooting in another

13   Lockheed plant.  As Lockheed persuasively argues, the former not only justified terminating Byrnes'

14   employment, but required it.  *See Swenson v. Potter*, 271 F.3d 1184, 1192 (9th Cir. 2001) ("[i]f the

15   employer fails to take corrective action after learning of an employee's sexually harassing conduct . . . [it]

16   can be deemed to have adopted the offending conduct and its results, quite as if they had been authorized

17   affirmatively as the employer's policy").  The latter, even standing alone, is sufficiently serious to belie

18   Byrnes' claim that Lockheed fired him for impermissible reasons.  The court thus grants Lockheed's motion

19   for summary judgment on Byrnes' FEHA claims.

20        **C.    Wrongful Termination of Employment in Violation of Public Policy**

21        California Labor Code section 2922 states that an employer may fire an "at-will" employee "with or

22   without good cause."  Despite this rule, however, California courts have long recognized that "there can be

23   no right to terminate for an unlawful reason or a purpose that contravenes fundamental public policy."

24   *Gantt v. Sentry Insurance*, 1 Cal.4th 1083, 1094 (1992), *overruled on other grounds by Green v.*

25   *Ralee Engineering Co.*, 19 Cal.4th 66, 80 n. 6 (1998).  Employers who discharge employees for reasons

26   that violate "fundamental polic[y]" that is "delineated in a constitutional or statutory provision" therefore face

27   tort liability.  *See Sequoia Ins. Co. v. Sup. Court*, 13 Cal. App. 4th 1472, 1480 (1993).

28

1   Byrnes claims that Lockheed fired him in violation of "California's public policy against

2   discriminating against workers over 40 years old with handicaps."  Compl. ¶ 17.  Byrnes does not articulate

3   what constitutional or statutory provision "deliniate[s]" this right.  The only such provision of which this court

4   is aware is the FEHA.  The court has already concluded that no reasonable jury could find that Lockheed

5   fired Byrnes in violation of the FEHA.  Thus, Lockheed is entitled to summary judgment on Byrnes'

6   wrongful termination of employment in violation of public policy claim.

7   **D.      Breach of Contract**

8   Byrnes' third cause of action alleges that Lockheed breached "an oral, implied-in-fact contract" that

9   he would be (1) "able to continue his employment . . . so long as he carried out his duties in a proper and

10   competent manner," (2) not "harassed, demoted, discharged, or otherwise disciplined," (3) given written

11   notice of complaints about his job performance, and (4) compensated fairly.  Compl. ¶ 22.  However,

12   Byrnes produces no evidence or argument about what this contract was or how it arose.  Although Byrnes

13   alleges that "portions of this contract are embodied in defendants' written personnel policies and disciplinary

14   procedures," *id*. at ¶ 23, he neither attaches any such policies or procedures to his opposition brief nor

15   attempts to summarize what they say.  It is undisputed that Byrnes was an "at-will" employee.  His

16   employment contract provides:

17   I understand my employment will be at the will of the company, and I the right to
     terminate my employment at any time, with or without cause and with or without notice,
18   with Lockheed retaining the same rights.

19   Schnepp Decl. Ex. A.  He also signed a Hire Notice, which states that Lockheed has made no

20   representations or assurances to him with respect to duration of his employment.  Schnepp Decl. Ex. B.

21   These facts, coupled with Byrnes' lack of evidence, entitles Lockheed to summary judgment on his breach of

22   contract cause of action.

23   **E.      Fraud and Deceit**

24   Byrnes alleges that "before and after" Lockheed hired him, it assured him "that he would be

25   compensated for his work . . . would not be discriminated against because he was over 40, suffered from

26   diabetes . . . and would not be . . . fired without cause."  Compl. ¶ 30.  Byrnes also claims that Schnepp and

27   Mayer "made specific representations to plaintiff . . . [that] included that [they] would support [him] and not

28

ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT AND GRANTING DEFENDANTS' MOTION
FOR SANCTIONS
C-04-03941 RMW
KMF/DOH                                                                           8

1   undermine his authority . . . [and] would be honest with [him] . . . [and] would not act in a discriminatory

2   fashion against [him]." *Id*. According to Byrnes, these promises were false and therefore fraudulent. *Id*.

3          As noted, it is undisputed that Byrnes was an at-will employee. To the extent that Byrnes claims that

4   Lockheed made misrepresentations to the contrary, it is well-established that parol evidence cannot be

5   "offered to show a promise which contradicts an integrated written agreement." *Alling v. Universal*

6   *Manufacturing Corp.*, 5 Cal. App. 4th 1412, 1436 (1992). Moreover, Byrnes fails to articulate what

7   these misrepresentations were, let alone produce any evidence to support his claim that they occurred. The

8   court grants Lockheed's motion for summary judgment on this claim.

9          **F.      Defamation**

10         Byrnes alleges that defendants defamed him. According to Byrnes, Wong called him "a sex harasser

11  and a dangerous harasser and [a] unstable person [and] accused him of harassment." Compl. ¶ 37. In

12  addition, Byrnes contends that Mayer and Schnepp "echoed these defamatory remarks." *Id*. Byrnes also

13  asserts that Wong, Schnepp, and Mayer "also called [him] dangerous and a menace and a danger to other

14  employees." *Id*.

15         The tort of defamation seeks redress for injury to reputation. It requires the publication of a

16  statement which is false, not protected by any privilege, and which exposes a person to contempt or ridicule.

17  *See* Cal. Civ. Code §§ 45, 46; *Shively v. Bozanich*, 31 Cal. 4th 1230 (2003). There are several problems

18  with Byrnes' defamation claims. For one, during Byrnes' deposition, he denied having knowledge that

19  Wong, Mayer, or Schnepp ever made disparaging statements about him:

20             Q.  Did you ever hear that Ms. Wong—did you ever hear Ms. Wong refer to you as a
                   sex harasser?
21             A.  No.
               Q.  Did you ever hear from anybody else that she referred to you as a sex harasser?
22             A.  No.
               Q.  Did you ever hear that she referred to you as a dangerous harasser?
23             A.  No.
               Q.  Do you have any evidence that she ever referred to you as a dangerous harasser?
24             A.  No.
               Q.  Do you believe that she ever referred to you as a dangerous harasser?
25             ***
               A.  I can't answer whether she was mad enough at some point in time to call me any
26                 sort of names. I was never aware of her saying anything about sexual harassment
                   and me in the same sentence. I mean, I have no idea.
27             Q.  And you have no idea that she ever referred to you as a violent person?
               A.  No.
28

ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT AND GRANTING DEFENDANTS' MOTION
FOR SANCTIONS
C-04-03941 RMW
KMF/DOH                                    9

Q. Do you have any reason to believe that Mr. Mayer ever referred to you as a sex harasser?
A. No.
Q. Do you have any reason to believe that Mr. Schnepp referred to you as a sex harasser?
A. No.
Q. Do you have any reason to believe that Mr. Mayer ever referred to you as being dangerously unhinged or a dangerous person?
A. I don't know on a person – personally, I don't know. I know that Mr. Mayer is an accomplished liar and would probably say that if he had a chance.
***
Q. So you don't have any fact upon which you could base a conclusion that he ever referred to you as a sex harasser; right?
A. Right.
Q. Or a violent person?
A. Correct.
Q. Or an unhinged individual?
A. No.
Q. Do you have any reason to believe that Mr. Schnepp ever called you a sex harasser?
A. No.
Q. Or a dangerous harasser?
A. No.
***
Q. Okay. What I'm saying is, did – do you have any reason to believe that Mr. Schnepp said anything about your violent disposition, if you will, or threats that you may have made, other than going to Ms. Dahm and saying that you had referred to gong postal or words to that effect?
A. No.

Byrnes Depo. at 278:18-282:16.  Byrnes' utter lack of evidence that any defamatory statement was "published" dooms his claim.  Moreover, it is black-letter law that statements that are "substantially true or . . . statements of opinion" are not actionable.  *Eisenberg v. Alameda Newspapers, Inc.*, 74 Cal. App. 4th 1359, 1382 (1999).  Byrnes does not dispute that he made unwelcome advances toward Wong and commented about "go[ing] postal."  Thus, no reasonable jury could conclude that defendants' alleged statements about Byrnes' conduct were sufficiently divorced from the truth to constitute defamation.  In any event, these alleged statements—that Byrnes was a "sex harasser," a "dangerous harasser," an "unstable person," a "menace," and "a danger to other employees"—are couched in defendants' own perceptions and therefore opinions rather than statements of fact.  Defendants are entitled to summary judgment on Byrnes' defamation claims.

1

### G.     Intentional Infliction of Emotional Distress

2    Byrnes asserts that "[t]he actions and defamation of defendants . . . were outrageous and inflicted

3    severe emotional distress" upon him.  Compl. ¶ 45.  Because the Worker's Compensation System provides

4    the exclusive forum for employees to seek redress for workplace remedies, a plaintiff cannot bring a

5    common law intentional infliction of emotional distress claim for "ordinary employer conduct that

6    intentionally, knowingly, or recklessly harms [him]."  *Fermino v. Fedco, Inc.*, 7 Cal.4th 701, 714 (1994).

7    That limitation however, "does not apply . . . when the 'injury is a result of conduct, whether in the form of

8    discharge or otherwise, not seen as reasonably coming within the compensation bargain.'"  *Kovatch v.*

9    *California Cas. Management Co.*, 65 Cal. App. 4th 1256, 1277 (1998) (holding that the Workers'

10   Compensation Act does not preempt intentional infliction of emotional distress claims predicated upon

11   wrongful termination in violation of public policy) (quoting *Shoemaker v. Myers*, 52 Cal.3d 1, 19-20

12   (1990)), *overruled on other grounds by Aguilar v. Atlantic Richfield Co.*, 25 Cal.4th 826 (2001).

13   Nevertheless, as noted above, because Byrnes has failed to introduce evidence to support his multiple claims

14   against defendants, no reasonable jury could conclude that their conduct transcended the ordinary range of

15   tolerable workplace behavior.

16

### H.     Byrnes' Request for a Delayed Ruling

17   Byrnes asks the court for a continuance to seek more evidence.  Federal Rule of Civil Procedure

18   56(f) permits a court to delay ruling on a summary judgment motion when the non-moving party explains that

19   it lacks key evidence:

20   Should it appear from the affidavits of a party opposing the motion that the party cannot for
     reasons stated present by affidavit facts essential to justify the party's opposition, the court

21   may refuse the application for judgment or may order a continuance to permit affidavits to be
     obtained or depositions to be taken or discovery to be had or may make such other order as

22   is just.

23   Fed. R. Civ. P. 56(f).  However, the non-moving party "bears the burden of showing 'what facts she hopes

24   to discover to raise a material issue of fact.'"  *Terrell v. Brewer*, 935 F.2d 1015, 1018 (9th Cir. 1991)

25   (quotation omitted).  The non-moving party must make "(a) timely application which (b) specifically identifies

26   (c) relevant information, (d) where there is some basis for believing that the information sought actually

27   exists."  *Visa Int'l Serv. Ass'n v. Bankcard Holders of Am.*, 784 F.2d 1472, 1475 (9th Cir. 1986).  In

28

ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT AND GRANTING DEFENDANTS' MOTION
FOR SANCTIONS
C-04-03941 RMW
KMF/DOH                                                              11

1  addition, it must show that it has not failed to diligently pursue discovery in the past.  *See Cal. Union Ins.*

2  *Co. v. Am. Diversified Sav. Bank*, 914 F.2d 1271, 1278 (9th Cir. 1990).  Byrnes cannot meet this

3  standard.  For one, Byrnes fails "specifically [to] identif[y]" what information he would seek to uncover.  In

4  addition, although Byrnes filed his complaint in September 2004, he did not notice Schnepp, Mayer, or

5  Wong's depositions until a full year later.  According to defendants, these depositions never took place

6  because Schnepp, Mayer, and Wong were not available for the initial noticed dates and then Byrnes

7  "subsequently cancelled each and every deposition that was scheduled."  Sprinkle Decl. Supp. Rep. Mot.

8  Summ J. ¶ 3.  The court thus denies Byrnes' request for a delayed ruling.

9      **I.      Motion for Sanctions**

10        Wong, Schnepp and Mayer move for sanctions against Byrnes and his attorney under Rule 11. That

11  Rule enables courts to impose monetary penalties on parties and attorneys who make allegations that lack

12  evidentiary support.  *See* Fed. R. Civ. P. 11(b)(1).  The purpose of Rule 11 is to deter dilatory or abusive

13  pretrial tactics and to streamline litigation by excluding baseless filings.  *See Cooter & Gell v. Hartmarx*

14  *Corp.*, 496 U.S. 384 (1990).[3]  When it becomes apparent that a case lacks evidentiary support, a client

15  and his lawyer have a duty to withdraw their complaint.  For example, in *Blossom v. Blackhawk Datsun,*

16  *Inc.*, 120 F.R.D. 91, 94 (S.D. Ind. 1988), a factually-similar case, the defendant counterclaimed for

17  defamation but admitted in his deposition that he had no evidence to support this claim.  The court

18  sanctioned the defendant and his counsel for continuing to litigate:

19        Mr. Schneider testified under oath that he had no knowledge of the facts underlying the
         defamation claim, so defendants and counsel knew or should have known that there was
20        no factual basis for the defamation claim, or at a minimum that the evidence to support the
         claim was not forthcoming.  At that point, the maintenance of the claim was no longer
21        compatible with the dictates of Rule 11.  Rule 11 not only obligates an attorney to conduct
         a reasonable pre-filing investigation, but also to review, examine, and re-evaluate his
22        position as the facts of the case come to light.  It is undisputed that Mr. Schneider firmly
         believed in the defamation claim as asserted.  However, by the time the depositions were
23        taken . . . it is evident that the factual basis for the defamation claim was lacking or at the
         very least that the defendants could not produce the evidence.  Adequate investigation or
24        research should have disclosed the flaws in this claim even before the depositions.  By that
         time, the defendants and their counsel had an obligation to dismiss the claim.

25

26        _____

           [3]      The "safe harbor" provision of Rule 11 requires the moving party to give the non-moving
27  party 21 days to withdraw the pleading at issue.  *See* Fed. R. Civ. P. 11(c)(1)(A).  Defendants complied
    with the safe harbor provision here by placing Byrnes' counsel on notice in August 2005 that they intended
28  to seek Rule 11 sanctions.  *See* Cook Decl. Ex. B.

    ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT AND GRANTING DEFENDANTS' MOTION
    FOR SANCTIONS
    C-04-03941 RMW
    KMF/DOH                                    12

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Id*. at 100 (internal citations omitted).  Likewise, in the instant case, Byrnes had no evidence to support a defamation claim at the time he filed, and this lack of factual support was brought out at Byrnes' deposition. Nevertheless, the claim was not withdrawn after the deposition and, in fact, Byrnes' counsel specifically refused to dismiss the claim after receiving defendants' warning letter regarding sanctions.  The institution of a defamation claim with no facts to support it and the continued pursuit of it following clear recognition of that is conduct which violates Rule 11.  The court sanctions Byrnes and his attorney in the amount of $975, jointly and severally, to be paid to Wong, Schnepp and Mayer defendants' counsel to partially reimburse them for fees incurred.  The court finds that $975 is less than what defendants have reasonably incurred in responding to plaintiff's defamation claim but is sufficient to deter similar future conduct.

### III.  ORDER

For the foregoing reasons, the court (1) grants Lockheed's motion for summary judgment, (2) grants Wong, Schnepp, and Mayer's motion for summary judgment, and (3) grants Wong, Schnepp, and Mayer's motion for sanctions in the amount of $975 to be split equally between  Byrnes and his attorney.


DATED:      12/28/05                              /s/ Ronald M. Whyte
                                                 RONALD M. WHYTE
                                                 United States District Judge

ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT AND GRANTING DEFENDANTS' MOTION
FOR SANCTIONS
C-04-03941 RMW
KMF/DOH                                    13

1

**Notice of this document has been electronically sent to:**

2

**Counsel for Plaintiff(s):**
Stanley G. Hilton          FROG727@aol.com

3

4

**Counsel for Defendant(s):**
John C. Cook          jcc@cookroos.com

5

Kent J. Sprinkle          ksprinkle@cookroos.com

6

7

Counsel are responsible for distributing copies of this document to co-counsel that have not registered for e-filing under the court's CM/ECF program.

8

9

10

**Dated:**          12/28/05                              DOH
                                         **Chambers of Judge Whyte**

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT AND GRANTING DEFENDANTS' MOTION
FOR SANCTIONS
C-04-03941 RMW
KMF/DOH                                        14